Miscellaneous Docket No. ___

---

IN THE
# United States Court of Appeals for the Federal Circuit

---

IN RE APPLE INC.,

*Petitioner.*

---

On Petition for Writ of Mandamus to the
United States District Court for the
Western District of Texas
No. 7:23-cv-00077-ADA, Hon. Alan D Albright

---

## APPLE INC.'S NON-CONFIDENTIAL
## PETITION FOR WRIT OF MANDAMUS

---

Roger A. Denning
FISH & RICHARDSON P.C.
12860 El Camino Real
Suite 400
San Diego, CA 92130

Joy Backer Kete
FISH & RICHARDSON P.C.
One Marina Park Drive
Suite 1700
Boston, MA 02210

Melanie L. Bostwick
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20005
(202) 339-8400

Jeffrey T. Quilici
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
300 W. 6th Street, Suite 1850
Austin, TX 78701

Emily W. Villano
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

*Counsel for Petitioner*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | |
| **Short Case Caption** | In re Apple Inc. |
| **Filing Party/Entity** | Apple Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/29/2024

Signature:    /s/ Melanie L. Bostwick

Name:    Melanie L. Bostwick

i

| 1. Represented Entities.<br>Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest.<br>Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders.<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Apple Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

---

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable              ☐   Additional pages attached

| | | |
|---|---|---|
| Ryan O'Connor | Oliver Richards | Ruffin B. Cordell |
| Nitika Fiorella | Kathryn Quisenberry | Karrie Wheatley |
| James Yang | Scott, Douglas & McConnico, LLP | Steven J. Wingard |

---

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

---

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable              ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

iii

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .................................................. i

TABLE OF AUTHORITIES .................................................... vi

INTRODUCTION .................................................................. 1

RELIEF SOUGHT ................................................................. 4

ISSUE PRESENTED .............................................................. 4

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............... 5

    Resonant sues Apple in the Western District of Texas,
    despite having no connection to that district. ........................ 5

    Apple seeks transfer to the Northern District of California. .......... 6

    Resonant opposes transfer without meaningfully
    investigating Apple's evidence. ............................................... 9

    The district court sua sponte reassigns the case to another
    judge, who denies transfer. .................................................... 12

REASONS FOR ISSUING THE WRIT ................................................. 16

    I.    Apple Has A Clear And Indisputable Right To The
        Writ ................................................................................ 18

        A.    The district court's analysis turned on its
            imposition of a clearly erroneous, heightened
            burden of proof. .......................................................... 18

        B.    The district court legally erred in discounting
            Apple's declarations. .................................................... 26

        C.    Applying the correct legal standard, Apple's
            evidence clearly establishes good cause for
            transfer. ...................................................................... 32

            1.    Relative ease of access to sources of proof
                strongly favor transfer. ....................................... 33

            2.    Witness convenience strongly favors transfer .... 36

            3.    Local interests strongly favor transfer. .............. 40

II.    Mandamus Is Appropriate To Clarify The Movant's
        Burden Under § 1404(a) ....................................................... 41

CONCLUSION ......................................................................................... 43

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF CONFIDENTIAL MATERIAL

## CONFIDENTIAL MATERIAL OMITTED

The material redacted from page 11 of the petition names
confidential third-party technology.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amazon.com, Inc.*,
   No. 2022-157, 2022 WL 17688072 (Fed. Cir. Dec. 15, 2022) ............ 35

*Ambraco, Inc v. Bossclip B.V.*,
   570 F.3d 233 (5th Cir. 2009) .............................................................. 23

*In re Apple Inc.*,
   818 F. App'x 1001 (Fed. Cir. 2020) .................................................... 23

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) .................................................... 21, 40

*In re Apple Inc.*,
   No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) .............. 39

*In re Apple Inc.*,
   No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) ......... 19, 21

*Cheney v. U.S. Dist. Ct.*,
   542 U.S. 367 (2004) ........................................................................... 16

*In re Clarke*,
   94 F.4th 502 (5th Cir. 2024) ...........................18, 21, 22, 25, 32, 33, 40

*Def. Distributed v. Bruck*,
   30 F.4th 414 (5th Cir. 2022) ........................................................ 20, 32

*Def. Distributed v. Grewal*,
   No. 1:18-cv-637-RP, 2021 WL 1614328 (W.D. Tex. Apr. 19, 2021) .... 32

*DIRECTV, Inc. v. Budden*,
   420 F.3d 521 (5th Cir. 2005) ....................................................... 27, 28

*In re DoDots Licensing Sols.*,
   No. 2024-100, 2023 WL 8642716 (Fed. Cir. Dec. 14, 2023) .............. 35

*Favela v. Collier,*
91 F.4th 1210 (5th Cir. 2024) ............................................. 32

*In re Google LLC,*
58 F.4th 1379 (Fed. Cir. 2023).....................3, 19, 21, 28, 29, 30, 31, 40

*Hammers v. Mayea-Chang,*
No. 2:19-CV-00181-JRG, 2019 WL 6728446 (E.D. Tex.
Dec. 11, 2019) ................................................................. 23

*In re Honeywell Int'l Inc.,*
No. 2023-152, 2024 WL 302397 (Fed. Cir. Jan. 26, 2024) .......... 37, 39

*In re HP Inc.,*
826 F. App'x 899 (Fed. Cir. 2020) ...................................... 39

*In re Hulu, LLC,*
No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021)................ 22

*Jawbone Innovations, LLC v. Google LLC,*
No. 6:21-cv-00985-ADA, 2022 WL 12078627 (W.D. Tex.
Oct. 20, 2022) ................................................................. 29

*In re Juniper Networks, Inc.,*
14 F.4th 1313 (Fed. Cir. 2021)............................. 19, 22, 31, 36, 40, 41

*In re Microsoft Corp.,*
No. 2023-128, 2023 WL 3861078 (Fed. Cir. June 7, 2023) ............... 33

*In re Netflix, Inc.,*
No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022) . 3, 31, 36, 37

*In re Samsung Elec. Co.,*
2 F.4th 1371 (Fed. Cir. 2021)........................................... 34, 38, 40, 41

*Scramoge Techs. Ltd. v. Apple Inc.,*
No. 6:21-CV-00579-ADA, 2022 WL 1667561 (W.D. Tex.
May 25, 2022).................................................................. 29

*In re TikTok, Inc.,*
85 F.4th 352 (5th Cir. 2023) .......... 17, 19, 22, 25, 26, 33, 35, 37, 40, 42

*Trois v. Apple Tree Auction Ctr., Inc.,*
  882 F.3d 485 (5th Cir. 2018) .......................................................... 23

*Van Dusen v. Barrack,*
  376 U.S. 612 (1964) ..................................................................... 43

*In re Verizon Bus. Network Servs. Inc.,*
  635 F.3d 559 (Fed. Cir. 2011) ....................................................... 24

*In re Volkswagen of Am., Inc.,*
  545 F.3d 304 (5th Cir. 2008) .................................. 1, 16, 18, 24, 41, 42

## Statutes

28 U.S.C. § 1404(a) ................................. 1, 4, 16, 17, 18, 21, 23, 24, 41, 42

## Rules and Regulations

Fed. R. Civ. P. 30(b)(6) .............................................................. 38

## Other Authorities

5B Charles Alan Wright, Fed. Prac. & Proc. § 1352 (3d ed. 2013) ......... 23

# INTRODUCTION

In its seminal en banc case, the Fifth Circuit cautioned against interpretations of § 1404(a) that would give "inordinate weight to the plaintiff['s] choice of venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) (en banc).  Here, at plaintiff Resonant's urging, the district court misread recent Fifth Circuit cases and effectively required a defendant to refute any hypothetical possibility of relevant connections to the transferor forum—even without the plaintiff having to provide any evidence of such connections.  Such speculation is in fact forbidden by Fifth Circuit precedent, and the district court's heightened burden of proof resurrects the same kind of undue deference to a transferor forum that *Volkswagen* rejected.  As in *Volkswagen*, the district court's "misconstruing [of] the weight of the plaintiff['s] choice of venue" constitutes "extraordinary error[]."  *Id.* at 318.

Resonant filed this patent infringement case in the Western District of Texas, a forum with no connection to the litigation.  Apple sought transfer to the Northern District of California, where the accused technology was developed, knowledgeable engineers and other employees reside, and five third-party suppliers of components

implicated by Resonant's infringement contentions are located.  Apple supported its motion with several detailed, sworn declarations, while Resonant pointed to a single Texas-based third-party that supplies a component with questionable connection to the alleged infringement.

Despite the lopsided record, the district court denied Apple's motion.  Its decision rested on two legal errors.  First, the district court improperly required Apple to prove a negative to show good cause for transfer.  In its view, Apple had not done enough to *disprove* the possibility that relevant evidence or events may exist in Texas.  The district court then repeatedly found that the possibility that hypothetical witnesses, sources of proof, or events giving rise to this litigation *might* exist in Texas weighed against transfer.  That was legal error; the Fifth Circuit has explicitly held that a transfer analysis must be based on record evidence, not the kind of speculation the district court employed here.

Second, the district court ignored Apple's detailed declarations locating the weight of the evidence and relevant witness in California on the grounds that they were "vague" and "conclusory," simply because Apple's declarants testified that, to their knowledge, no relevant

2

connection between this litigation and Texas exists. That too was legal error: Apple offered declarations from individuals who personally work on the subject matter of the litigation and know where relevant evidence is located. This Court has held repeatedly that declarations of a similar character must be given credence. *See, e.g.*, *In re Google LLC*, 58 F.4th 1379, 1384 (Fed. Cir. 2023); *In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *3 (Fed. Cir. Jan. 19, 2022).

The district court's transfer analysis was contrary to binding law, a clear abuse of discretion leading to a patently erroneous result. A transfer movant carries its burden by clearly demonstrating that evidence, witnesses, and relevant events are centered on the transferee venue. Apple's declarations established exactly that, and this Court has held repeatedly that it is error to refuse to credit such declarations. Apple had no obligation to go further by surveying every document and employee in Texas to prove that each is *not* connected to this case, as the district court's reasoning would require—particularly given Resonant's utter failure to proffer any record evidence suggesting that such connections exist there.

These legal errors drove the district court's denial of transfer. Without them, the district court would have had to conclude that the sources-of-proof, witness-convenience, and local-interest factors weighed firmly in favor of transfer, while none favored the Texas venue. This Court should grant mandamus to clarify the appropriate burden of proof on a § 1404(a) motion and should order the district court to grant Apple's transfer motion.

## RELIEF SOUGHT

Apple respectfully requests that the Court grant this petition for a writ of mandamus, vacate the district court's decision to deny Apple's transfer motion, and remand the case with instructions to transfer this action to the United States District Court for the Northern District of California.

## ISSUE PRESENTED

Whether the district court clearly abused its discretion in refusing to transfer this case to the Northern District of California, where the clear weight of the § 1404(a) convenience factors points, by imposing on Apple a heightened burden amounting to proof of a negative proposition, failing to credit undisputed record evidence establishing

that the vast majority of witnesses and evidence are located in California, and simultaneously crediting plaintiff's speculation about the existence of hypothetical witnesses and evidence in Texas.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### *Resonant sues Apple in the Western District of Texas, despite having no connection to that district.*

Plaintiff Resonant Systems, Inc., d/b/a RevelHMI, is a patent-holding company headquartered in Seattle, Washington, that once sold vibrating actuators. Appx85-86; Appx247. Resonant claims no ties to Texas, aside from its litigation counsel in Dallas (in the Northern District). *See* Appx85-93.

Nevertheless, in June 2023, Resonant filed this patent lawsuit in the Midland-Odessa Division of the Western District of Texas. Appx39-47. Resonant alleged that various models of Apple's iPhone, MacBook, and Apple Watch products infringe four patents generally related to linear-resonant vibration modules—components that shake back-and-forth to vibrate a device. Appx87-91. Resonant's infringement theory targets Apple's Taptic Engine, a feature in the accused products that produces vibrations to provide haptic feedback to users. *See, e.g.*, Appx49-84; Appx272-754.

5

Apple's Taptic Engines were designed by a combination of Apple engineering teams including Input Devices, Haptics Hardware Engineering, Human Interface Devices, Core Audio and Core Haptics, and MacBook Product Design.  Appx123-124.  Across those teams, 85 engineers are in Northern California, 11 are in San Diego, and one is in China.  Appx123-124.  None are in Texas, nor do they work with anyone in Texas.  Appx123-124.  Apple's employees responsible for the relevant finance and licensing are also predominantly in Northern California, as are multiple relevant third parties.  Appx123-125; Appx120; Appx117-118; Appx103.

### *Apple seeks transfer to the Northern District of California.*

Because this case lacks any connection to the Western District of Texas, Apple moved to transfer the case to the Northern District of California.  *See* Appx95-115.  Apple demonstrated that relevant documents and likely witnesses are concentrated in the Northern District of California, where its engineering teams and third-party suppliers are centered, and emphasized Resonant's lack of connection to Texas or the Western District.  Appx101-103.  Apple supported its motion with evidence including sworn declarations from four employees.

One declaration came from Chang Zhang, a Senior Engineering Manager for the Input Devices team, based in Cupertino. Appx122-125. Mr. Zhang's declaration was based on his personal knowledge—including his decade of experience in "research, design, development, and implementation of the Taptic Engines for the accused MacBook Products"—corporate records, and discussions with other employees. Appx123. Mr. Zhang identified five engineering teams (including his own) involved in development of the accused Taptic Engines, recounted the number of engineers in each, and identified their work locations, with 85 of the 97 engineers located in the Northern District of California. Appx123-124. Mr. Zhang—who is well-situated to know the location of team members working on projects within his scope of responsibility—also attested that, to his knowledge, no Texas-based Apple employees work on the Taptic Engines. Appx124. Mr. Zhang further attested that each team stores physical documents and prototypes in California, with none in Texas. Appx124. And Mr. Zhang attested that access to each team's electronic documents is "restricted on a need-to-know basis," and that he was "not aware of anyone in Texas with access rights." Appx124. He also named five third-party

component suppliers that supply the Taptic Engines for the accused products, each of which have offices in the Northern District of California.  Appx125.

Apple also provided declarations from Catherine Spevak, a Finance Manager knowledgeable about financial information for the accused products; Brian Ankenbrandt, a Senior Manager on the IP Transactions team that handles patent licensing; and Robin Goldberg, a Discovery Manager who confirmed that Apple stores physical examples of prior art and the accused products in Northern California.  Appx119; Appx116; Appx126.  Each of these declarants works in the Northern District of California.  Appx119; Appx116; Appx126.  Ms. Spevak and Mr. Ankenbrandt also provided information about the other Apple employees in their areas of expertise and confirmed that most are in Northern California.  Appx120; Appx117-118.  Both also attested that document custodians, whose access is restricted "on a need-to-know basis," are chiefly in the Northern District of California and that, to their knowledge, none are in Texas.  Appx120; Appx118.

**_Resonant opposes transfer without meaningfully investigating Apple's evidence._**

The parties engaged in three months of venue discovery, extended from the usual 10-week maximum at Resonant's request. Appx756. During that period, Resonant sought identification of "all persons who live or work in Texas, in the United States east of the Mississippi River, and/or outside of the United States" that "may have relevant knowledge" of _any aspect_ of the accused products—not merely the accused Taptic Engine technology—as well as "the complete methodology" used by each Apple declarant to investigate and support their declarations. Appx235; Appx243.

Apple objected to the overbroad nature of these requests, some of which sought privileged information. Among other things, Apple explained that it "is organized functionally and not based on specific products," meaning it "does not maintain a company-wide list of all products that each employee works on." Appx228. Nonetheless, Apple provided Resonant a detailed account of the responsibilities of its Texas-

based employees and a lengthy list of active Apple employees in
Austin.[1]  Appx236-240; Appx154-221.

Apple also confirmed that "there is no specific relationship
between any Apple … facility located in the Western District of Texas
and the allegations in this case"; although some Apple employees in
Texas are "involved in operations, finance, sales, and/or customer
support for all Apple products, generally," and thus might have "general
knowledge about the accused products," none were "involved in the
design or development of the Taptic Engines in the accused products."
Appx238.  "[T]herefore," Apple explained, it had "not identified any
relevant witnesses in this case who reside or work in Texas."  Appx238.
After receiving this information, Resonant did not seek to compel
additional discovery.  Nor did Resonant try to depose any Apple
employee.  Appx255.

Despite having access to this detailed information about Apple's
Austin-based employees, Resonant's transfer opposition identified no
allegedly relevant Apple employees, documents, or other evidence

---

[1] By agreement, the list excluded retail, customer support, human
resources, and corporate administration employees.

CONFIDENTIAL MATERIAL OMITTED

located in Texas.  Appx133-151.  Instead, Resonant leveled baseless criticisms at Apple's declarants, suggesting for example that an employee whose job focuses on the features Resonant accuses "would not know if relevant people work in Austin."  Appx144.  Resonant also speculated that Austin-based employees "likely" have relevant knowledge despite Apple's sworn confirmation to the contrary.  *See* Appx142-149.

Apart from such speculation, Resonant alleged two connections to Texas:  Cirrus Logic, an Austin-based supplier of ███████ components not expressly identified in Resonant's infringement contentions, and Resonant's own files that were transferred to its counsel in Dallas. Appx138-139; Appx145-149.

In reply, Apple emphasized that Resonant rested its opposition chiefly on unfounded speculation.  Appx255.  Apple also showed that Cirrus Logic's ███████ circuits have little to do with the accused features.  Appx255-264.  Regardless, Apple provided a sworn statement from Cirrus Logic identifying its primary contact with Apple (who is in California) and stating that it would not object to subpoenas in the Northern District of California.  Appx258; Appx269-271.  Finally, Apple

11

demonstrated, contrary to Resonant's argument, why recent Fifth Circuit decisions did not create new law or an elevated burden for transfer movants.  Appx263-264.

Resonant then filed a sur-reply that, among other things, speculated that Cirrus Logic was "working behind the scenes with Apple to hinder Resonant's case" and would, contrary to the sworn statement, likely require compulsory process to testify in Northern California.  *See* Appx766.

### *The district court sua sponte reassigns the case to another judge, who denies transfer.*

Throughout venue discovery and briefing, this case was assigned to the district judge in the Midland-Odessa Division.  In late March 2024, that judge issued a sua sponte order transferring the case to the docket of the district judge in the Waco Division, while formally keeping it in Midland-Odessa.  *See* Appx771.  The order provided no reason for the transfer beyond "both judges having consented."  Appx771.  Three weeks later, the district court denied Apple's transfer motion.  *See* Appx1-28.

The district court acknowledged Apple's demonstration of evidence and likely witnesses in Northern California.  Appx7; Appx18-19.  And it

acknowledged that, but for third-party Cirrus Logic, Resonant had demonstrated no connection between this case and the Western District of Texas. Appx8; Appx20. But the district court nonetheless denied transfer by (1) faulting Apple for providing an allegedly insufficient showing of why its presence in Austin is *not* relevant to this case; (2) discounting sworn declarations Apple provided establishing the locations of evidence that *is* relevant to this case; and (3) drawing inferences against the record evidence and speculating about what documents and witnesses might exist in Austin, contrary to Apple's sworn evidence.

This approach drove the district court's analysis on the three factors that proved decisive: access to sources of proof, willing witnesses, and local interest. For example, after weighing Apple's evidence against Resonant's, the district court opined that the access to sources of proof factor would "[a]t a glance … seem to favor transfer." Appx8. But it then concluded that Apple "failed to provide the factual foundation necessary to evaluate the relative convenience of the present and proposed venues," for two reasons. Appx8. First, the district court characterized Apple's declarations as "vague and generalized." Appx8-

13

9.  Second, the district court accused Apple of "choos[ing] declarants who lack personal knowledge" about witnesses and evidence in Austin as part of a continuing "stratagem" to "suppl[y] declarants" who are unaware of relevant witnesses and evidence "and who fail to investigate either when moving to transfer patent cases."  Appx9-10.

The district court criticized Apple's declarants primarily for stating they were unaware of any relevant employees or documents in Texas.  *See* Appx10-11.  The declarants could not identify any such Texas-based material—because, as their declarations state, the relevant work is not performed in Texas—so the district court concluded that they "lack *personal knowledge* about Apple's WDTX potential for sources of proof."  Appx12-13.  The district court also faulted Apple's declarants for not "includ[ing] a description of the methodology used to find all relevant sources of proof in WDTX," while acknowledging that Resonant "did not seek the Court to compel discovery" on this or any other aspect of Apple's evidence.  Appx12-13.

Ultimately, the district court concluded that the sources of proof factor is "neutral if not slightly disfavoring transfer" after "acknowledging Cirrus Logic's source of proof in WDTX."  Appx14.

14

As to the convenience of willing witnesses, the district court considered only three of Apple's declarants themselves, refusing to credit, for example, the five teams of engineers who work on the accused Taptic Engines and were discussed in Mr. Zhang's declaration. Because Mr. Zhang did not name each one individually, the district court concluded it could not "consider them without being caused to speculate … [a]nd the same is true of any other unnamed Apple sales and patent licensing team members." Appx18-19. The district court instead speculated that "there may be more relevant witnesses in WDTX" whom neither Apple nor Resonant had identified. Appx22. Ultimately, the district court found the willing-witness factor to weigh "slightly against transfer" by comparing Apple's "three named witnesses"—that is, the declarants who might testify—and "five component suppliers" in Northern California against eleven individual employees that Resonant had identified from a single third-party, Cirrus Logic. Appx22.

The district court found the remaining factors neutral, including local interests, where it again faulted Apple for failing to provide enough evidence that the Western District of Texas does *not* have a connection to the events giving rise to suit. Appx22-27. The district

court then denied Apple's motion after concluding that no factor favors transfer.  Appx27.

## REASONS FOR ISSUING THE WRIT

A petitioner seeking mandamus relief must (1) show a "clear and indisputable" right to the writ; (2) have "no other adequate means to attain the relief [it] desires"; and (3) demonstrate that "the writ is appropriate under the circumstances."  *Volkswagen*, 545 F.3d at 311 (quoting *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004)).  The second prong is necessarily satisfied where a district court improperly denies transfer under § 1404(a).  *See id.* at 318-19.  The first and third prongs are satisfied where a district court commits a "clear abuse of discretion" and reaches a "patently erroneous result."  *Id.* at 310-12, 318-19.

This case meets that high standard.  Apple's evidence established that the sources of proof, witnesses, and events giving rise to this litigation were heavily concentrated in Northern California.  *Supra* 6-8.  Yet the district court determined that Apple had not met its burden, on the grounds that Apple had failed to dispel the possibility that other,

unidentified sources of proof, witnesses, and relevant events *might* be in Texas.  Appx10-11; Appx13; Appx22; Appx26-27.

That was legal error.  Establishing good cause for transfer under § 1404(a) does not require the moving party to prove a negative, particularly in the face of speculation (rather than evidence) offered by the non-moving party.  Contrary to the district court's reasoning, recent Fifth Circuit caselaw does not condone such a heightened burden; it *reinforces* that transfer decisions must be "rooted in record evidence"— not "pure speculation" about gaps in the record.  *In re TikTok, Inc.*, 85 F.4th 352, 360 (5th Cir. 2023).  *Infra* I.A.

The district court's analysis is also clearly erroneous in view of the factual record.  Apple's detailed declarations, each from someone knowledgeable about the locations of relevant information, establish that evidence, witnesses, and relevant events are overwhelmingly located in California, whereas Resonant neither offered counterbalancing evidence favoring Texas nor deposed Apple's declarants to test the basis for their declarations.  The district court's decision to deem Apple's supporting evidence "vague" or "conclusory" contradicts the Fifth Circuit's and this Court's precedent.  And the

district court was wrong to assume that Apple submitted declarations from individuals with inadequate knowledge simply because those declarants did not know of anyone relevant in Texas.  *Infra* I.B.

Absent these errors, the district court would have had to conclude that the § 1404(a) factors clearly favored transfer.  *Infra* I.C.  For that reason, Apple has a clear and indisputable right to the writ.  Because mandamus is necessary to prevent the district court's flawed approach from proliferating, *infra* II, and is the only adequate means to secure relief, the Court should grant Apple's petition.

## I.  Apple Has A Clear And Indisputable Right To The Writ.

### A.  The district court's analysis turned on its imposition of a clearly erroneous, heightened burden of proof.

**1.**  Section 1404(a) requires the moving party to "adduce evidence and arguments that clearly establish good cause for transfer."  *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024).  This requirement is met "[w]hen the movant demonstrates that the transferee venue is clearly more convenient."  *Volkswagen*, 545 F.3d at 315.

Both this Court and the Fifth Circuit have repeatedly held that the moving party can make that demonstration by showing—such as through sworn declarations—that relevant evidence, witnesses, and

events giving rise to the litigation are in the transferee forum. *See, e.g.*, *TikTok*, 85 F.4th at 360 (burden met with declarations and deposition testimony); *Google*, 58 F.4th at 1384 (burden met with sworn declaration identifying location of knowledgeable employees and relevant evidence); *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) (same); *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022) (same).

Apple provided the kind of evidentiary showing that has repeatedly been held to require transfer: detailed, sworn declarations from knowledgeable employees identifying the locations of the individuals who work on the accused technology and the third parties who supply relevant components, all of which are overwhelmingly concentrated in the transferee forum, with none in the plaintiff's chosen forum. *See supra* 6-8. As the district court recognized, Resonant provided no evidence showing the contrary, instead citing just one Texas-based third-party. Appx8. Nonetheless, the district court faulted *Apple* for failing to proffer evidence surveying all business that Apple conducts in the Western District of Texas to establish that *none* has any connection to this litigation. Appx8-11. Without such evidence, the

district court reasoned, Apple had not provided "the factual foundation necessary to evaluate the relative convenience of the present and proposed venues." Appx8. The district court thus adopted plaintiff's novel argument that a transfer movant must not only establish where relevant evidence *is* located, it must also prove the negative: that relevant evidence *is not* in the plaintiff's chosen forum.

**2.** This is legal error amounting to a clear abuse of discretion. The obligation to show "good cause" for transfer means that "[w]here there is *no* demonstration by the movant … the court cannot weigh a factor against the non-movant and in favor of transfer." *Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022). But it does not require a party seeking transfer to conclusively dispel *any* hypothetical possibility that might support litigation in the transferor forum, particularly when the non-moving party has failed to establish a connection.

Rather, this Court has favorably weighed transfer declarations that, just like Mr. Zhang's, identify relevant evidence or events in the movant's proposed venue while testifying the declarant is "unaware" of similarly relevant evidence in the present venue. *Compare* Appx10

20

(discounting Apple's declarations because they state declarant is "unaware" of proof in Texas), *with Google*, 58 F.4th at 1383-84 & n.2 (favorably weighing declaration identifying California witnesses and stating declarant was "not aware" of Texas witnesses); *accord, e.g.*, *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020); *Apple*, 2022 WL 1196768, at *4. None of these cases require the defendant to produce proof of detailed investigations into the *possibility* of evidence in the plaintiff's chosen venue, let alone disprove that possibility, particularly where no evidence rebuts the defendant's showing.

**3.** The district court adopted Resonant's view that a recent Fifth Circuit decision, *Clarke*, raised the § 1404(a) evidentiary standard. The district court relied on language from *Clarke* explaining that "[f]or each factor, the defendant's proffered venue is measured against the plaintiff's chosen venue." 94 F.4th at 510 & n.9; Appx9. And because the "transfer factors are *relative*," the district court reasoned that a movant cannot meet its burden solely by offering evidence on "one side." Appx9.

But *Clarke* marks no departure from the wealth of caselaw cited above (at 19, 20-21) establishing that the type of evidence Apple

adduced here provides good cause for transfer. Transfer analyses have always turned on the "relative" conveniences of the competing forums. *Juniper*, 14 F.4th at 1321; *TikTok*, 85 F.4th at 359. That has never required transfer movants to address all potential sources of proof in the plaintiff's chosen forum and prove that none are relevant.

Nor did *Clarke* suggest any such thing. In relevant part, *Clarke* stands for the uncontroversial proposition that evidence of convenience does not favor transfer if it applies equally to any venue. The Fifth Circuit determined that a challenged regulatory action produced identical effects on individuals nationwide. 94 F.4th at 510. Such a "diffuse interest"—the "same in both the transferor and transferee venue"—"net[s] out to zero" in the transfer analysis. *Id.* That commonsense rule concerns only how the parties' evidence should be *weighed* on a motion to transfer; it says nothing about the movant's burden of production.

**4.** To the extent the Fifth Circuit touched on evidentiary standards at all in *Clarke*, its discussion supports transfer here. *Clarke* emphasized that a district court cannot base transfer decisions on bare "speculation." *Id.* at 513; *see TikTok*, 85 F.4th at 360, 361 & n.9; *In re*

*Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021) (error to deny transfer based on nothing "other than speculation").  Yet the district court did so here:  Against Apple's robust evidentiary showing regarding California, the district court weighed Resonant's speculation that Apple's Texas-based employees "*might* possess relevant sources of proof," that there "*may* be more relevant witnesses in [Texas]," and that Texas "*may* have a stronger local interest" in the litigation.  Appx10; Appx22; Appx26 (emphases added).

The district court grounded its approach in a perceived "duty to 'draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party'" on a transfer motion.  Appx9 (quoting *Hammers v. Mayea-Chang*, No. 2:19-CV-00181-JRG, 2019 WL 6728446 (E.D. Tex. Dec. 11, 2019)).  But no such evidentiary presumption applies here.  The district court's supporting citations involve motions to dismiss for improper venue.  *See* 5B Charles Alan Wright, Fed. Prac. & Proc. § 1352 (3d ed. 2013); *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 492-93 (5th Cir. 2018); *Ambraco, Inc v. Bossclip B.V.*, 570 F.3d 233, 237 (5th Cir. 2009).  This Court has "question[ed] the propriety" of importing that standard into the § 1404(a) context.  *In re Apple Inc.*, 818 F. App'x

23

1001, 1003 (Fed. Cir. 2020). For good reason: The § 1404(a) analysis is "based on the individualized facts on record"—not bare allegations. *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 561 (Fed. Cir. 2011). And because "under § 1404(a) a court does not have authority to dismiss the case," it requires a "lesser showing of inconvenience." *Volkswagen*, 545 F.3d at 313.

The district court also drew adverse inferences from Apple's objections to Resonant's burdensome discovery requests. *See* Appx12-13; Appx21. For example, the district court noted Apple's refusal to search the email archives of every Texas-based Apple employee. Appx13. The district court acknowledged that the applicable standing order forbids email searches absent a good-cause showing, which Resonant did not attempt to make, and that Resonant "did not seek the Court to compel" this or any other discovery. Appx13; Appx21. Still, the district court accepted Resonant's contention that Apple, by adhering to the governing discovery order, "failed to investigate relevant witnesses in WDTX and blocked Resonant from identifying them during discovery." Appx20. The district court speculated that these investigations might turn up relevant witnesses or evidence.

24

Appx22.  And it weighed those *possibilities* against Apple's record evidence.  Appx21-22.

Fifth Circuit precedent precludes the district court's approach.  A district court may credit "reasonable inferences" only where "rooted in record evidence"; departures from the record constitute a "clear abuse of discretion."  *TikTok*, 85 F.4th at 359-60; *see also Clarke*, 94 F.4th at 513.  Thus, a district court can neither draw inferences in favor of the plaintiff based on perceived record gaps nor draw adverse inferences from unchallenged discovery objections.

*TikTok* is directly on point.  TikTok provided declarations and other evidence establishing that its source code—"the most important evidence in [the] case"—was accessible only to its employees in California and China.  85 F.4th at 359.  The district court, however, noted many Texas-based TikTok employees and accordingly viewed it as "an extremely plausible and reasonable inference that [such] employees possess some relevant documents."  *Id.*  The Fifth Circuit deemed this analysis a "clear abuse of discretion."  *Id.* at 360.  Because neither the district court nor the plaintiff pointed to "any record evidence" tying TikTok's Texas-based employees to this case, the notion

that those individuals might have access to relevant proof was "pure speculation." *Id.*

The same reasoning applies here. Neither the district court nor Resonant identified any record evidence tying Apple's presence in Texas to this litigation. Nevertheless, the district court inferred that witnesses or evidence *might* turn up there and used these speculative sources of proof to counterbalance Apple's detailed showing regarding the convenience of litigating in California. Such a transfer denial not "rooted in record evidence" constitutes "a clear abuse of discretion." *TikTok*, 85 F.4th at 360.

## B. The district court legally erred in discounting Apple's declarations.

In addition to imposing an inappropriately heightened burden of proof, the district court improperly discounted the record Apple assembled in favor of transfer. Neither of the district court's criticisms of Apple's evidence stands up to scrutiny.

**1.** The district court criticized what it viewed as the limits of the declarants' personal knowledge. Appx9. For example, Mr. Zhang stated that, "to [his] knowledge," no Apple engineer in Texas works on the Taptic Engines, and he was "not aware" of physical evidence or

employees in Texas with access rights to relevant electronic evidence. Appx124.  Instead of taking such statements to establish that *no such evidence exists there*, as they plainly do, the district court faulted Apple for purportedly submitting declarations from individuals "wholly unaware … of the goings on of Apple's Texas campus."  Appx10.

The district court had no basis to conclude that Apple had put forth declarants with "selectively fed knowledge."  Appx10.  A statement from Mr. Zhang that he is "not aware" of engineers in Texas working on the Taptic Engines does not mean that he is "wholly unaware" of what Apple does in Texas; it means that he knows where the people working on the Taptic Engines are, and none are in Texas.  By taking an overly literal approach to the declarants' choice of words, the district court failed to credit statements clearly establishing the relative convenience of California.

Moreover, under Fifth Circuit precedent, the district court should have considered what it is "reasonably within [the] position" or "sphere of responsibility" for Apple's declarants to know.  *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005).  An employee in Mr. Zhang's position—who has spent a decade working on the accused Taptic

Engines—would be "familiar" with which other engineers have worked
on that technology. *Id.* Mr. Zhang stated he is not aware of anyone in
Texas who did so, even after a review of Apple's corporate records and
interviews with other Apple employees. Appx124. Particularly where
Resonant presented no evidence to the contrary, and failed even to
depose Apple's declarants to probe the limits of their investigations into
Texas, the district court should at least have "reasonably inferred" that
no such person exists. *DIRECTV*, 420 F.3d at 530.

In fact, discounting Apple's declarations would be erroneous *even
if* Resonant had identified relevant Apple employees in Texas. For
example, in *Google,* the plaintiff had provided evidence suggesting that
"some of [Google's] Texas employees work on aspects of the accused
products," which the district court took to undermine the declarant's
testimony that she was "not aware" of any such employee. 58 F.4th at
1384 n.2. In this Court's view, such evidence revealed, "at most, a
partial gap in [her] knowledge"—not a basis to deem the declaration
unreliable, and *not* a basis to "substantially discount[] the imbalanced
nature of where the potential Google witnesses are located." *Id.* This
Court took that view notwithstanding the district court's criticism that

the declarant did not provide "the basis of her knowledge or explain what she did to investigate," *Jawbone Innovations, LLC v. Google LLC*, No. 6:21-cv-00985-ADA, 2022 WL 12078627, at *3 n.2 (W.D. Tex. Oct. 20, 2022). Just as in *Google*, there is "no reason to doubt the adequacy of [the] investigation" performed by Apple's declarants, even without such a detailed explanation. 58 F.4th at 1384 n.2.

The district court not only discounted Apple's supporting declarations without proper basis, but further suggested that Apple had already been reprimanded for providing similarly "faulty" declarations as part of an ongoing "stratagem" to tilt the transfer analysis in favor of California. Appx9-10; Appx12. But any suggestion that Apple has a practice of filing misleading declarations is groundless. As authority for this supposed pattern, the district court cited its prior order granting Apple's transfer motion in *Scramoge Technologies Ltd. v. Apple Inc.*, No. 6:21-CV-00579-ADA, 2022 WL 1667561, at *2-3 (W.D. Tex. May 25, 2022). As Apple demonstrated in *Scramoge*, the district court was wrong there to fault its venue declarant for doing exactly what corporate witnesses frequently do: gathering information from individuals within Apple and relaying that information on behalf of the

company. Appx772-782; Appx783-800. This Court later agreed with the substance of Apple's argument, deeming "unreasonable" the district court's decision to discount a similar declaration from a corporate witness. *See Google*, 58 F.4th at 1384 & n.2. Regardless, Apple here did not rely on a corporate declarant to investigate and assemble information from individuals with direct knowledge, but instead relied on the knowledgeable individuals themselves, whom even the district court acknowledged were personally involved in the subject matter of the dispute. *See* Appx18-19.

Whether using a corporate declarant or individuals with direct knowledge, Apple is not cherry-picking declarants or information to avoid revealing Texas-based connections. It is offering truthful, factual information about the location of the relevant conduct, which is not in Texas. While Apple had no burden to prove a negative, *see supra* § I.A, the district court should have determined from Apple's declarations that no relevant evidence exists in Texas, particularly in light of Resonant's failure to identify a single Apple employee with relevant and material information there.

**2.** The district court also incorrectly deemed Apple's declarations "vague and generalized." Appx8. But as already discussed, Mr. Zhang specifically identified relevant sources of proof—"prototypes," "papers," "electronic files," "source code" and potential witnesses—and located them in California. *See supra* 7-8. This Court has previously held that a district court was "unjustified" in deeming even less detailed declarations "vague" and "not … specific enough." *Juniper*, 14 F.4th at 1321 (addressing declaration stating that defendant "stores the majority of its [relevant] documentary evidence … at its Sunnyvale headquarters"). And it has found clear error in the failure to properly credit declarations with similar levels of detail. *See, e.g.*, *Netflix*, 2022 WL 167470, at *3; *Google*, 58 F.4th at 1384 ("unreasonable" to "steep[ly] discount[]" declaration "identif[ying] [defendant's] employees in the [transferee venue] … with technical knowledge of the accused functionality").

The district court did not attempt to square its reasoning with this precedent. Instead, it cited two recent Fifth Circuit cases for the idea that it could not credit "conclusory" assertions. Appx12. Neither case involved anything like the evidence at issue here. In each, the Fifth

31

Circuit faulted the district court for crediting attorney arguments lacking any underlying factual showings.  Thus, it faulted one district court for accepting a party's bare assertion in briefing (not in a sworn declaration) that sources of proof would "obvious[ly]" be in New Jersey based on the "nature of the claims."  *Def. Distributed v. Grewal*, No. 1:18-cv-637-RP, 2021 WL 1614328, at *7 (W.D. Tex. Apr. 19, 2021); *see Bruck*, 30 F.4th at 434 (citing "lack of proof" for this assertion).  And it rejected another district court's reliance on a party's assertion that an Administrative Procedure Act case would not require an evidentiary hearing.  *Clarke*, 94 F.4th at 514.

Here, by contrast, Apple provided sworn declarations from knowledgeable witnesses setting out "specific facts," which the Fifth Circuit has expressly distinguished from conclusory assertions.  *Favela v. Collier*, 91 F.4th 1210, 1213 (5th Cir. 2024) (holding that district court erred in refusing to credit declaration).

### C.    Applying the correct legal standard, Apple's evidence clearly establishes good cause for transfer.

In evaluating whether a movant has shown good cause for transfer, the court weighs a familiar set of private- and public-interest factors.  Here, the district court clearly erred in failing to weigh three

key factors in favor of transfer: the "relative ease of access to sources of proof," "cost of attendance for willing witnesses," and "local interest." *Clarke*, 94 F.4th at 509. Apple adduced evidence showing that California is where "[t]he vast majority of potential witnesses with relevant and material information reside, where accused product features were researched, designed, and developed, and where [electronic and] physical evidence is located." *In re Microsoft Corp.*, No. 2023-128, 2023 WL 3861078, at *2 (Fed. Cir. June 7, 2023). Resonant failed to make a showing of counterbalancing connections to Texas. Had the district court's analysis been "rooted in record evidence" rather than conjecture, *TikTok*, 85 F.4th at 360, it would have found these three factors weigh strongly in favor of transfer.

### 1. Relative ease of access to sources of proof strongly favor transfer.

The district court correctly recognized that "a considerable amount of evidence exists in NDCA." Appx7. Apple engineers developed the accused Taptic Engines in Northern California; almost every engineer who works on the Taptic Engines now resides there; and electronic documents, including source code and specifications, relevant sales and finance information, and patent license agreements, are

generated in California. Appx123-124; Appx117-118; Appx120. Access
to these technical and business documents is restricted on a need-to-
know basis, and the Apple employees with access rights reside almost
exclusively in California. Appx124; Appx118; Appx120. Physical
evidence such as prototypes and potential prior art products also is
stored in California. Appx124; Appx127. Additionally, five third-party
suppliers of the Taptic Engines and a named inventor of the asserted
patents reside in California. Appx125; Appx129-132.

Resonant, meanwhile, presented no meaningful evidentiary
connection to Texas. Resonant first relied on documents sent to its
counsel's office in Dallas. Appx145. As the district court correctly
determined, Appx8, this evidence is outside the Western District of
Texas and, regardless, such a "construct for litigation" cannot weigh
against transfer. *In re Samsung Elec. Co.,* 2 F.4th 1371, 1378 (Fed. Cir.
2021).

Resonant also relied on the presence of Cirrus Logic in Austin.
Appx146. But Resonant neither mentioned Cirrus Logic in its
complaint or infringement contentions nor articulated how it allegedly
contributes to infringement—even in the face of Apple's repeated

requests for explanation. Appx223-226; Appx230-232. Resonant instead argued that Apple should have "investigate[d]" whether Cirrus Logic is relevant because "venue transfer is … *Apple's* burden of proof"; differently put, Resonant rests on speculation that Cirrus Logic's components *might* be infringing. Appx137; Appx763.

On such a record, there can be little doubt that the sources-of-proof factor should have weighed strongly in favor of transfer. *See TikTok*, 85 F.4th at 360.

Even if it were proper for the district court to consider Cirrus Logic, the "*overwhelming* presence" of sources of proof in California would still point in favor of transfer. *In re Amazon.com, Inc.*, No. 2022-157, 2022 WL 17688072, at *4 (Fed. Cir. Dec. 15, 2022). That is particularly true where, as here, access to relevant Apple documents is restricted to employees who are overwhelmingly in California. *See, e.g.*, *TikTok*, 85 F.4th at 359; *In re DoDots Licensing Sols.*, No. 2024-100, 2023 WL 8642716, at *2 (Fed. Cir. Dec. 14, 2023).

The district court concluded otherwise only by crediting speculation that sources of proof *might* exist in Texas and improperly requiring Apple to disprove that supposition. Appx8-14; *see supra* 19-

26. Its refusal to weigh the sources-of-proof factor in favor of transfer was a clear abuse of discretion. *Netflix*, 2022 WL 167470, at *2-3.

### 2. Witness convenience strongly favors transfer.

The convenience of willing witnesses is the "single most important factor in transfer analysis." *Juniper*, 14 F.4th at 1318. It strongly favors transfer here. All but one of the engineers on teams responsible for developing the Taptic Engines reside in California—and none reside in Texas. Appx123-124. Relevant finance and licensing personnel are similarly concentrated in Northern California. Appx117-118; Appx120. Five component suppliers are likewise in Northern California. Appx125.

The district court nonetheless weighed this factor "slightly against transfer." Appx22. Its determination rested, again, on the legal errors discussed above. *Supra* §§ I.A, I.B. Rather than credit Apple's declarations detailing the locations of relevant witnesses, the district court weighed *against* transfer the possibility that unspecified Apple employees in Texas might be "potentially relevant." Appx20-22. Such speculation is improper. *Supra* § I.A. It is a "clear abuse of discretion" to weigh hypothetical witnesses against transfer where the "record is

devoid of any evidence supporting an inference that [Apple's] Austin employees have any knowledge of or connection to this specific dispute." *TikTok*, 85 F.4th at 361 n.9. At a minimum, the district court had no reason to disbelieve the adequacy of the investigations performed by Apple's declarants. *Supra* § I.B.

The district court compounded these errors. To start, the district court did not consider any Apple employee in California beyond three declarants because Apple had not "named" any other witnesses. Appx18. In the district court's view, considering the dozens of other specifically identified but "unnamed" Apple employees would amount to illicit "speculat[ion]." Appx19. But nothing in the transfer analysis requires that a potential witness be identified by name. Employees who are members of the teams focused on "the design, development, [and] functioning" of the accused feature surely count as potential witnesses. *In re Honeywell Int'l Inc.*, No. 2023-152, 2024 WL 302397, at *2 (Fed. Cir. Jan. 26, 2024); *see also Netflix*, 2022 WL 167470, at *4 (weighing "21 employees … that were part of [the defendant's] product and engineering teams" in favor of transfer). Mr. Zhang enumerated the members of teams working on the Taptic Engines and provided the

location of each.  Appx124.  The district court lacked any "sound basis to diminish the[] conveniences" of litigating in California for these engineers.  *Samsung*, 2 F.4th at 1379.

Next, the district court patently erred in its accounting of potential witnesses from third-party suppliers.[2]  The district court acknowledged that Apple had identified *five* undisputedly relevant component suppliers located within 100 miles of the California forum.  Appx21.  The district court weighed in favor of transfer *one* witness from each of those suppliers because Apple did not "name their Rule 30(b)(6) representatives, or any engineers or … sales or licensing [employees]."  Appx21.  Then, the district court weighed *against* transfer eleven Cirrus Logic employees, each located 310 miles away from the Midland courthouse, because their names appeared in discovery documents.  Appx21-22.

That analysis was flawed in multiple respects.  The district court ignored the California-based Cirrus Logic employee who actually interacts with Apple.  Appx270.  Furthermore, Resonant offered only

---

[2] The district court considered these witnesses under this factor, not compulsory process, because none were shown unwilling to appear. Appx21.

speculation that *any* Cirrus Logic employees (especially those in Texas) possess "relevant and material" knowledge. *Honeywell*, 2024 WL 302397, at *3 (declining to weigh convenience of individuals where "it was unclear what, if any, relevant and material information these individuals have"). In any event, the convenience of one non-party should not have weighed more heavily than the convenience of the five other non-parties, simply because the *names* of several individual Cirrus Logic employees were known. This Court has explained that there is "no basis to discount [corporate] entities just because individual employees were not identified." *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020); *accord In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021). But that is functionally what the district court did, penalizing Apple for not naming individual employees of its California-based suppliers. Appx21-22. Particularly without any record basis to conclude otherwise, each relevant third-party supplier should have weighed equally in the transfer analysis. At a minimum, it was implausible to assume that *eleven* employees from Cirrus Logic will testify at trial whereas only *three* will testify from Apple.

Given the plainly "imbalanced nature of where the potential …

witnesses are located," this factor should have weighed "firmly" in favor

of transfer.  *Google*, 58 F.4th at 1384 & n.2.

### 3.    Local interests strongly favor transfer.

To "identify localized interests," the court looks to "significant

connections between a particular venue and the events that gave rise to

a suit."  *Clarke*, 94 F.4th at 511.  In a patent infringement suit, the

place where the allegedly infringing features in accused products were

"researched, designed, and developed" has the most "legitimate interest

in adjudicating the case[] 'at home.'"  *Samsung*, 2 F.4th at 1380; *see also*

*Apple*, 979 F.3d at 1345; *Juniper*, 14 F.4th at 1317.  Apple's sworn

declarations demonstrated that this design and development took place

overwhelmingly in the transferee forum.  Appx123-124.

Nevertheless, the district court incorrectly deemed this factor

"neutral."  Appx26.  Its analysis reprised the errors discussed above,

improperly discounting Apple's declarations and crediting speculation—

not "rooted in record evidence"—that relevant events *might* have taken

place in Texas.  *TikTok*, 85 F.4th at 360; *supra* §§ I.A-B.

40

Absent these errors, the district court should have concluded that the Northern District of California has a strong local interest in this case. *Samsung*, 2 F.4th at 1380; *Juniper*, 14 F.4th at 1317. And the district court patently erred in suggesting that the presence of Cirrus Logic in Austin, by itself, could outweigh that strong local interest. Appx26. As noted above (at 34-35), nothing in the record shows—and Resonant has yet to explain—how Cirrus Logic's component contributes to any alleged infringement. By contrast, Apple demonstrated the relevance of *five* California suppliers of components actually included in Resonant's infringement contentions. *Supra* 7-8.

The district court's failure to recognize that the strongest local interests were in California was a clear abuse of discretion.

## II. Mandamus Is Appropriate To Clarify The Movant's Burden Under § 1404(a).

"[W]rits of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case." *Volkswagen*, 545 F.3d at 319. The Fifth Circuit also recently encouraged grants of mandamus where doing so will "improve 'consistency of outcomes' by … instructing when transfer

is—or, for that matter, is not—warranted in response to a § 1404(a)

motion." *TikTok*, 85 F.4th at 367.

Mandamus is appropriate here. The district court's decision

introduces an improperly heightened standard for the evidence a

transfer movant must supply and furthermore requires the movant to

prove a negative proposition to defeat ungrounded speculation about

the convenience of the plaintiff's chosen forum. Absent guidance,

defendants will be forced to undertake highly burdensome

investigations simply to prove what they already know: that individuals

and records within their companies that are relevant to a particular

aspect of their business are *not* located in the transferor forum. And

plaintiffs will secure favorable inferences purely by criticizing a

defendant's showing of convenience while, like Resonant here,

conducting no investigation of their own. None of this will further the

purpose of § 1404(a), which is to "prevent … abus[e]" of the plaintiff's

privilege to select venue. *Volkswagen*, 545 F.3d at 313.

The Supreme Court has cautioned that § 1404(a) should not be

interpreted to "enable parties opposed to transfer, by means of their

own acts or omissions, to prevent a transfer otherwise proper and

warranted by convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 623 (1964). This Court should exercise its mandamus authority to ensure that district courts do not continue to reward speculation over evidence.

## CONCLUSION

The Court should grant the petition, vacate the district court's decision denying Apple's motion to transfer, and direct the district court to transfer the case to the Northern District of California.

Respectfully submitted,

*/s/ Melanie L. Bostwick*

Roger A. Denning
FISH & RICHARDSON P.C.
12860 El Camino Real
Suite 400
San Diego, CA 92130

Joy Backer Kete
FISH & RICHARDSON P.C.
One Marina Park Drive
Suite 1700
Boston, MA 02210

Melanie L. Bostwick
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20005
(202) 339-8400

Jeffrey T. Quilici
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
300 W. 6th Street, Suite 1850
Austin, TX 78701

Emily W. Villano
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

*Counsel for Petitioner*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on May 29, 2024.

A copy of the foregoing was served upon the following counsel of record and the district court via FedEx:

Reza Mirzaie
Kristopher Davis
Christian W. Conkle
Jason Wietholter
Paul A. Kroeger
Qi Tong
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: (310) 826-7474
rmirzaie@raklaw.com
kdavis@raklaw.com
cconkle@raklaw.com
jwietholter@raklaw.com
kroeger@raklaw.com
ptong@raklaw.com

Hon. Alan D Albright
United States District Court for the Western District of Texas
800 Franklin Avenue, Room 301,
Waco, Texas 76701
Telephone: (254) 750-1501

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*

# CERTIFICATE OF COMPLIANCE

The petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because this petition contains 7,782 words.

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*

## CERTIFICATE OF CONFIDENTIAL MATERIAL

The petition contains 1 unique word and number marked as confidential.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Melanie L. Bostwick*
Melanie L. Bostwick
*Counsel for Petitioner*